WILLIAM DALRYMPLE and SYLVESTER R. DALRYMPLE

*v.*

JOHN H. RAMSEY et al.

The lien given by our statute to mechanics and others who do work or furnish material in the erection of a building, extends to legal estates and interests only, and does not embrace equitable estates or interests.

---

On demurrer.

*Mr. Alvah A. Clark,* for the demurrant.

*Mr. William A. Cotter,* for the complainants.

VAN FLEET, V. C.

The defendant Ramsey has demurred to the complainants' bill, and the question which this condition of the pleadings raises is, whether the lien given by our statute to mechanics and others who do work or furnish material in the erection of a building, extends to equitable estates; in other words, is a material-man who furnishes material to the owner in equity of lands, for the erection of a building thereon, entitled to the lien given by our statute for the value of such material?

The complainants rest their right to relief on the following facts: Arthur Crate, in June, 1886, employed Nahum Apgar to purchase a lot of land for him; after Apgar had made a contract for the land, Crate gave him the money to pay for it. Apgar paid for the land with Crate's money, but accepted a deed

Dalrymple *v.* Ramsey.

made to himself and delivered the deed to Crate. No deed was made from Apgar to Crate. Crate took possession of the land and erected buildings thereon. He purchased the material, used in the erection of the buildings, of the complainants. On the 9th of September, 1886, Crate and his wife executed a mortgage on the land to the defendant Ramsey for $1,000, and Crate applied part of the money received from Ramsey to the payment of the debt he owed the complainants for material. Between June 24th, 1887, and the 24th of September following, Crate purchased other material of the complainants, which he used in making additions to the buildings he had previously erected. He still owes for this material. Early in 1888 Ramsey ascertained that at the time his mortgage was executed the legal title to the mortgaged premises was in Apgar and not in Crate; he thereupon made a contract to purchase the land of Crate for $1,600, and Crate, on the 1st day of March, 1888, procured Apgar to convey the land to Ramsey. The complainants, by their bill, say, that Ramsey was informed by Crate, before he purchased the land, " that the aforesaid lumber bill of your orators was unpaid, and he took title to said premises with such knowledge." On the 10th of April, 1888, the complainants filed a lien claim against the buildings and land, describing Crate as the builder and Ramsey as owner, and they subsequently brought suit to enforce their lien in the circuit court of the county of Hunterdon. Ramsey defended and the trial of the suit resulted in a judgment of non-suit as to Ramsey and a judgment against Crate.

The facts above recited show beyond question, that Crate, at the time the complainants' debt was contracted, was the owner in equity of the land against which the complainants ask to have their debt enforced. On the facts above stated, Crate had a right to have a resulting trust established, as against Apgar, at any time while he held the legal title. The case is entirely free from all doubt or difficulty as to the character of Crate's estate in the land. He was the owner of it in equity. This brings us to the test question of the case, namely, does the lien given by the statute under consideration extend to equitable estates? The statute

is an innovation. The lien and the mode of enforcing it are creatures of the statute. *Ayres* v. *Revere, 1 Dutch. 474–481.* The lien is just what the statute makes it. The courts have no power either to enlarge or lessen it. Independent of the statute, a debt contracted in the erection of a building stands no higher, in point of natural justice, than many other debts, and the lienable quality of such a debt should, therefore, be rigidly restricted to just what legislature has made it. The question as to what estates or interests in lands the legislature meant to put within the grasp of this lien, can only be accurately determined by a full and careful examination and consideration of all parts of the statute. If we were to restrict our view so as to see nothing but the first and fourth sections, it might not perhaps be difficult to reach a conclusion, that the legislature meant that the lien should take within its grasp every right, interest and estate which it was possible for a person to hold in land. The first section declares, in substance, that any debt contracted for labor performed or material furnished for the erection and construction of a building, shall be a lien on such building and the land whereon it stands, including the lot or curtilage whereon the same is erected; and the fourth, in substance, says, that if a building shall be erected by any other person than the owner of the land, then, and in that case, the building and the estate in the land of the person so erecting the building shall be subject to the lien given by the statute. *Rev. pp. 668, 669.* These are the provisions which create the lien. Standing alone, I think it would not be a too liberal an interpretation of them to say, that they are broad enough to include both legal and equitable estates and interests, but if this should be held to have been the legislative purpose, it would not require a very active imagination to see that many equitable estates in land, now supposed to be perfectly secure against the extravagant notions and improvident schemes of the owner, would at once become liable to be swept away under the lien created by this statute.

But these provisions do not stand alone. After creating the lien and defining how it shall be made a matter of record, the statute prescribes what court shall have power to decide whether

it exists or not, how it shall be enforced, and also what process shall be used in its enforcement. This part of the statute, in my judgment, shows, with entire clearness and certainty, that the legislature meant that the lien should extend to legal estates and interests alone. Power to enforce the lien is vested exclusively in the circuit court of the county in which the building is situated. *Rev. p. 672 § 18.* Jurisdiction is given to no other tribunal. In a case where the question is simply whether the lien created by the statute exists or not, a court of equity is without the least shred of jurisdiction. Where a court of equity has acquired jurisdiction of a suit upon some well-established ground of equity cognizance, and the decision of the suit renders it necessary for the court, in order that full and complete justice may be done to all parties, to pass upon the rights of a person claiming a lien under this statute, the court may, in that case, settle and determine his rights, but not otherwise. Mr. Justice Magie, in delivering the judgment of a majority of the judges of the court of errors and appeals, who heard the case of *Cutter* v. *Kline, 8 Stew. Eq. 534–551,* said: "While the court of chancery, in dealing with the lands subject to such a lien, may marshal the claim in its proper place and preserve its position as regards other encumbrances, that court has not been entrusted by the statute with the power of determining whether the lien can be enforced against the lands. The statute has entrusted that power to the circuit court." The circuit court has no power to deal with equitable estates. Chancery powers may be given to it so far as relates to the foreclosure of mortgages and the sale of mortgaged premises, but this is the utmost extent to which the legislature may go in investing it with chancery powers. *Const. art. 4 § 7 ¶ 10.* From the fact that the question whether a lien exists or not, in any case, is committed exclusively to the determination of a tribunal which can, in such a matter, exercise no chancery power whatever, and is without the least authority either to deal with or recognize equitable estates or interests, but must, in deciding whether a lien exists or not, confine itself to strict rules of law, as contradistinguished from the principles of equity jurisprudence, it

would seem necessarily and unavoidably to follow that the legis-lature meant that the lien created by this statute should extend to legal estates and interests only. This view has the support also of the method of the procedure prescribed by the statute for the enforcement of the lien. From beginning to end the proceeding is a common-law procedure. From the filing of the lien claim to the final act for its enforcement, by conveyance from the sheriff to the purchaser, the entire proceeding is, in all respects, modeled after a suit at law, and is without the least trace or sign indicating that it was designed either to reach or pass equitable rights.

My conclusion is, that the lien created by the statute under consideration does not extend to equitable estates, and I am, therefore, of opinion that the demurrer should be sustained, with costs.

No case is made by the complainants' bill, as at present framed, which entitles them to the aid of this court to reach the equitable assets of their judgment debtor. They do not show that they have exhausted the means which the law affords them for the enforcement of their judgment. Unless they desire to amend their bill so as to ask the aid of the court to reach the equitable assets of their judgment debtor, and have them applied in pay-ment of their judgment, I think their bill must be dismissed.